UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

GREGORY BARNES                                                                    PLAINTIFF

V.                              No. 4:20-CV-00067-JTR[1]

CLARK GREEN, Officer,
Dallas County Detention Center, *et al*.                                       DEFENDANTS

# **ORDER**

On January 15, 2020, Plaintiff Gregory Barnes ("Barnes") initiated this action. *Doc. 1*. In his Complaint, he alleges that Defendants violated his constitutional rights while he was a prisoner in the Dallas County Detention Center ("DCDC"). *Id*. After screening that pleading,[2] the Court allowed Barnes to proceed with his excessive force and denial of medical care claims against Defendants Clark Green ("Green"), Dillon McKee ("McKee"), and Kevin Archer ("Archer"). *Doc. 7*. Barnes alleges the incident occurred on the night of January 9, 2020. *Doc. 1*. Defendants contend it took place shortly after midnight on January 10, 2020. *Doc. 37, Ex. 1-3*. Because the

---

[1] On June 22, 2020, the parties consented in writing to allow all further proceedings in this case to be handled by a United States Magistrate Judge. *Doc. 17*.

[2] The Prison Litigation Reform Act requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or a portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. *Id*. § 1915A(b). When making this determination, a court must accept the truth of the factual allegations contained in the complaint, and it may consider documents attached to the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

precise time of the incident is not material, the Court will split the difference and characterize the incident as taking place around midnight on January 9, 2020.

On December 29, 2020, the Court granted Barnes's Motion to Amend. *Doc. 24*. His Amended Complaint added claims that DCDC Jail Administrator Ryan Coleman ("Coleman")[3] and Dallas County Sheriff Stan McGahee ("McGahee") failed to timely respond to Barnes's excessive force grievance and failed to investigate the January 9, 2020 incident. *Doc. 32 & 33*.[4]

Barnes and Defendants Green, McKee, Archer have now filed cross Motions for Summary Judgment, Briefs in Support, and Statements of Undisputed Facts. *Docs. 27–29 & 44–46*. Defendants have filed a Response to Barnes's Motion for Summary Judgment, along with a Brief in Opposition and Statements of Facts in Dispute. *Docs. 35–37*. Barnes has filed a Response in Opposition to Defendants' Motion, along with a Response disputing certain facts in Defendants' Statement of Undisputed Facts, which Barnes supports with attached affidavits. *Docs. 48–50*. Finally, Defendants have filed a Reply to Barnes's Response. *Doc. 51*.

---

[3] As of the date of this Order, Coleman has not been properly served. *Doc. 52*.
[4] The Court directed that Barnes's Amended Complaint be docketed as "Plaintiff's First Amended and Substituted Complaint." *See Docs. 32 & 33*.

As a threshold matter, the Court will address, *sua sponte*, the claims Barnes has asserted against McGahee in his Amended Complaint,[5] and then address the merits of the parties' cross Motions for Summary Judgment.

## I. Discussion

### A. On the Face of the Pleadings, It Is "Patently Obvious" the § 1983 Claims Barnes Has Asserted Against McGahee Fail to State a Claim for Relief

In Barnes's Amended Complaint (*Doc. 33*), he alleges that Coleman and McGahee: (1) failed to timely respond to his grievance complaining about Green, McKee, and Archer using excessive force and not providing him with adequate

---

[5] After a defendant has been served, if it is "patently obvious" from the face of the pleadings that the plaintiff cannot prevail based on the facts alleged, a court may, *sua sponte*, dismiss those claims, without prejudice, under Rule 12(b)(6). *See Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938 (8th Cir. 2012) ("We have held ... that even where a district court exercises its power to *sua sponte* dismiss a claim (without *any* pending motion to dismiss), the court's failure to give the plaintiff notice and an opportunity to respond before doing so is not reversible error if 'it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint.'") (quoting *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991)).

McGahee has been served and is a party to this action. Thus, I am permitted, *sua sponte*, to evaluate whether Barnes's claims against McGahee state a plausible claim for relief under § 1983. Because Coleman has not yet been served, he is not a proper party. Accordingly, the Court need not address the merits of those claims, as to Coleman, even though they are identical to the patently defective claims Barnes has asserted against McGahee.

With the benefit of hindsight, I should have dismissed Barnes's claims against Coleman and McGahee when I screened the Amended Complaint. I did not do so because I mistakenly believed Barnes was asserting the same excessive force and inadequate medical care claims against them that he had previously asserted against Green, McKee, and Archer. A closer reading of his Amended Complaint makes it clear that: (1) he is asserting *new claims* against Coleman and McGahee; and (2) it is "patently obvious," on the face of his allegations, that he cannot prevail on those claims.

medical care for his injuries; and (2) failed to adequately investigate the January 9, 2020 excessive force incident. *Doc. 33 at 2*.[6]

To state a claim for relief under § 1983, Barnes must allege facts showing that Coleman and McGahee deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988); *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012). A jail official's failure to adequately investigate an incident raised in a grievance does *not* rise to the level of a constitutional violation. *See Oakes v. Howell*, No. 5:11-CV-00294-KGB-JJV, 2012 WL 7177827, at *5 (E.D. Ark. Sept. 25, 2012) ("[A]n allegation that a prison official failed to adequately investigate a grievance does not state a constitutional claim.")[7] (citing *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) ("[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless)). Accordingly, on the face of the allegations in his Amended Complaint, it is patently obvious Barnes has not stated a claim for a constitutional

---

[6] Barnes's Amended Complaint states these claims against Coleman and McGahee as follows:
"Upon filing a grievance to Defendants Ryan Colman [sic] and Stan McGahee about the excessive force my grievance went unanswered for months. Plaintiff wasn't afforded any remedies stated by policy. There was no investigation done by these high level officials that denied due process. When faced with policy or custom violations administration in the course of their supervisor responsibilitys [sic] its their job to answer an inmate request for help when they don't that denies due process."
*Doc. 33 at. 2*.

[7] Report and recommendation adopted, No. 5:11-CV-00294-KGB, 2013 WL 645949 (E.D. Ark. Feb. 21, 2013), aff'd, 547 F. App'x 808 (8th Cir. 2013).

violation arising from McGahee's alleged failure to properly investigate the January 9, 2020 excessive force incident after Barnes filed a grievance.

*A fortiori*, McGahee's alleged failure to provide a *timely response* to Barnes's grievance does not state a claim for relief. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (concluding that Plaintiff "failed to state a claim because no constitutional right was violated by the defendants' failure . . . to process [Plaintiff's] grievances"); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having … prison officials follow prison regulations").

Thus, on the face of the allegations in Barnes's Amended Complaint, it is "patently obvious" he has failed to state a claim for relief against McGahee under § 1983.[8] Accordingly, the Court *sua sponte* dismisses Barnes's claims against McGahee, without prejudice, and he is terminated as a party to this action. *See Smith*, 945 F.2d at 1043 ("We now hold that a district court *sua sponte* may dismiss a complaint under Rule 12(b)(6) as long as the dismissal does not precede service of process."); *Christiansen*, 674 F.3d at 938.

---

[8] Even if Barnes had asserted that Coleman or McGahee, as supervisory officials, were liable for the alleged actions of Green, McKee, and Archer, this claim would also fail under the "patently obvious" standard of review. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1030–31 (8th Cir. 2012) (supervisors cannot be held vicariously liable under § 1983 for actions of subordinates; general allegations that defendant supervises facility without specification of defendant's individual actions, are not sufficient to state claim).

## B. Barnes's Motion for Summary Judgment on His Claims Against Green, McKee, and Archer[9]

According to Barnes's Statement of Undisputed Facts: (1) he was assaulted by Green, McKee, and Archer, each of whom used excessive force against him;[10] (2) after the incident, they denied him medical treatment for his injuries;[11] (3) there was no medical staff on hand at DCDC at the time of the incident; and (4) Defendants have not offered any evidence to prove how his actions led to the injuries he suffered. *Doc. 28*.

In Defendants' Statement of Facts in Dispute, they contest Barnes's Statements of Undisputed Facts. *Doc. 37*. Defendants admit they had an altercation with Barnes on January 9, 2020, after they completed a search of his cell.[12] However,

---

[9] Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). An assertion that a fact cannot be disputed, or is genuinely disputed, must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

[10] Specifically, Barnes alleges that: (1) McKee grabbed him, "without warning," and "slam[med] him on his face, dislocating his shoulder;" (2) "[a]fter he was subdued," Green "applied a substantial amount of chemical agent to [his] face when [there] was completely no need;" and (3) Archer then "excessively restrained" him causing additional pain. *Doc. 33 at 2*.

[11] In his Amended Complaint, Barnes alleges that he suffered a dislocated shoulder from the incident and was denied medical treatment for it. *Doc. 33 at 2*. In his original Complaint, Barnes also complained that he was not allowed to shower after the incident, causing the mace to "spread[] throughout [his] whole body." *Doc. 1 at 1*.

[12] According to Defendants, during a perimeter check, McKee and Archer "noticed a butter knife in the window of [Barnes's] cell, and McKee "alerted the Tower about the knife." *Doc. 37, Ex. 1-3 at ¶ 3*. Barnes was then "seen by the Tower" taking the knife from the window, going under the stairs, to the toilet, then back to his cell. *Id. at ¶ 4*. During the second search, Defendants assert that McKee "found the knife by the toilet." *Id. at ¶ 6*.

they contend Barnes "refused several orders" to re-enter his cell, and then "started a scuffle with officers to avoid being put in his cell." *Id. at 1*. This resulted in "McKee spray[ing] Barnes with OC spray to subdue him." *Id.*[13] Further, Defendants assert that, after the altercation, Barnes was offered medical treatment, but he refused it. *Id.*[14]

The conflicting Statements of Undisputed Facts and the conflicting Affidavits of the parties make it clear there are many hotly disputed issues of material fact that prevent the Court from deciding the merits of Barnes's Motion for Summary Judgment on all of his claims against Defendants. Accordingly, Barnes's Motion for Summary Judgment (*Doc. 27*) is DENIED.

### C. Defendants' Motion for Summary Judgment

In their Rule 56 motion papers (*Docs. 44–46 & 51*), Green, McKee, and Archer argue that they are entitled to qualified immunity on Barnes's excessive force and inadequate medical care claims. According to their Affidavits, they used only

---

[13] Barnes alleges that it was Green who sprayed him with the chemical spray. *Doc. 33 at 2*. While Defendants initially asserted, in their Statement of Facts in Dispute, that "McKee sprayed Barnes with OC spray to subdue him," (*Doc. 37 at ¶ 1*), in their Statement of Undisputed Facts in support of their Motion for Summary Judgment, they assert that "Clark deployed his OC spray" (*Doc. 46 at ¶ 8*), an apparent reference to Defendant Clark Green. The Court notes that the affidavits of McKee, Green, and Archer are all silent as to who sprayed Barnes. *Doc. 37, Ex. 1-3 at ¶ 8; Doc. 46, Ex. 1-3 at ¶ 8*.

[14] In McKee's affidavit, he stated that, after the altercation, "Barnes began complaining of shoulder pain and as per procedure I notified the jail nurse so an ambulance could be called. Inmate Barnes indicated that he would refuse to be seen by the ambulance and that he no longer needed medical attention. Therefore, the ambulance was canceled." *Doc. 37, Ex. 1*. The affidavits of Green and Archer, as well as the Dallas County Detention Report, written by McKee, coincide with the facts in McKee's Affidavit. *Id. at Ex. 2 & 3*.

the amount of force necessary to subdue and control Barnes. Furthermore, they contend that Barnes did not have a need for medical care after the altercation, but, even if he did, he was offered medical care, but declined to receive it. *Doc. 45*.

As the Court recently explained in *Raeburn v. Gibson*, No. 20-2001, 2021 WL 3871916 (8th Cir. Aug. 31, 2021):

> "Courts conduct a two-part inquiry to determine whether qualified immunity protects a government official from liability: (1) whether the facts taken in a light most favorable to [the plaintiff] make out a violation of a constitutional ... right; and (2) whether that right was clearly established" at the time of the official's alleged misconduct. *Hoyland v. McMenomy*, 869 F.3d 644, 652 (8th Cir. 2017) (second alteration in original) (citation omitted). "The court may consider these steps in any order, but '[u]nless the answer to both of these questions is yes, the [official] [is] entitled to qualified immunity.'" *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (first alteration in original) (citations omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

*Id.* at *2.

"When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Henderson v. City of Woodbury*, 909, F.3d 933, 939 (8th Cir. 2018) (quoting *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013)). Furthermore, "[q]ualified immunity shields a government official from liability in his individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Chaney v. Smith*, No. 4:18-CV-00539-KGB, 2020 WL 7034558, at *5 (E.D. Ark. Nov. 30, 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome the defense of qualified immunity, the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

### 1. Green, McKee, and Archer Are Not Entitled to Qualified Immunity on Barnes's Excessive Force Claim

*a. Viewing the Facts in the Light Most Favorable to Barnes, He Demonstrated that Green, McKee, and Archer Violated His Constitutional Rights.*

The Fourteenth Amendment's "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989)). To demonstrate excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 389, 396–97 (2015). *See also Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).

Viewing the facts in Barnes's Statement of Undisputed Facts and his supporting Affidavits, in a light most favorable to him, he has demonstrated that Defendants used excessive force, in violation of his constitutional rights.

9

Specifically, according to Barnes's sworn or verified statements about the incident:[15] (1) he did not "refuse[] to obey direct orders" from McKee, Green and Archer (*Doc. 49 at ¶ II*); (2) McKee "grabbed" him, "without warning," and "slam[med] him on his face, dislocating his shoulder" (*Doc. 33 at 2*); (3) after he was subdued by McKee, "Green applied a substantial amount of chemical agent to [his] face when there was completely no need" (*Id.*); and (4) after he was already subdued and maced, Archer then "excessively restrain[ed]" him, causing "a wanton infliction of pain" (*Id.*).

Based on Barnes's sworn allegations that, without *any* provocation or wrong doing on his part, McKee slammed him to the ground and Green maced him,[16] a reasonable jury could find that the amount of force applied by Defendants McKee and Green was objectively unreasonable.

---

[15] *See* Fed. R. Civ. P. 56(c) (a party can show the existence of a genuinely disputed material fact through "depositions [and] affidavits or declarations"); *Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (providing a verified complaint made under threat of perjury "is the equivalent of an affidavit and can serve as [a plaintiff's] response to [a] defendant's summary judgment motion); *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994-95 (8th Cir. 2001) (complaint signed under penalty of perjury is equivalent of a verified complaint, and a plaintiff may rely on the facts stated therein just as if they had been stated in an affidavit).

[16] The Court may only disregard Barnes's version of events if it is blatantly contradicted by the record. *See Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 781 (8th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Other than Defendants' affidavits, which create a "swearing match" between the parties, there is no videotape or other document in the record that blatantly contradicts Barnes's narrative. *See Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003) (Officers' testimony contradicting Plaintiff's version of events "merely created a credibility issue for the fact finder").

It is unclear exactly what allegations Barnes is making against Archer when he states Archer "excessively restrained" him. However, Barnes's allegations show, at minimum, that Archer was present and failed to intervene when McKee and Green applied excessive force. "[A] jail official violates a detainee's due-process rights if the official knows that another official is using excessive force against the detainee but fails to intervene." *Edwards*, 750 F.3d at 733. Consequently, a reasonable jury could also find that Archer violated Barnes's constitutional rights.

While Defendants' hotly dispute these facts in their Statement of Undisputed Facts and supporting Affidavits, the Court is not permitted to weigh the credibility of affiants or resolve genuine and disputed issues of material fact in deciding if Defendants are entitled to qualified immunity. "Making credibility determinations or weighing evidence in this manner is improper at the summary judgment stage, and 'it is not our function to remove the credibility assessment from the jury.'" *Coker v. Arkansas State Police*, 734 F.3d 838, 843 (8th Cir. 2013) (denying motion for summary judgment, based on alleged qualified immunity, in an excessive force case where there was no recording of incident and parties' versions differed) (quoting *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002)); *Montoya v. City of Flandreau,* 669 F.3d 867, 872 (8th Cir. 2012) (explaining, in an excessive force case, that it is not the court's "function to remove credibility assessment from the jury").

On this record, and for the purposes of summary judgment *only*, Barnes has met his burden to show a deprivation of his constitutional right to be free from excessive force.

> b. *At the Time of the Incident, Barnes's Right to be Free from Objectively Unreasonable Force was Clearly Established.*

In their Summary Judgment papers, Defendants focus solely on the first prong of the qualified immunity standard and apparently concede the "clearly established" prong. However, because Defendants are entitled to qualified immunity unless *Barnes* shows that *both* prongs are met, the Court will address the issue.

Generally, a pretrial detainee's right to be free from punitive excessive force was clearly established at the time of the incident on January 9, 2020. *Kingsley*, 576 U.S at 397; *Edwards*, 750 F.3d at 732. However, "[t]he Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (en banc), cert. denied, 141 S. Ct. 1071 (2021) (citation and internal ellipsis omitted); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). Instead, "[a] more specific and particularized inquiry is necessary in order to assess clearly established law in the context of an assertion of qualified immunity." *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020).

Therefore, the issue is: "whether the violative nature of <u>particular</u> conduct is clearly established ... in light of the specific context of the case." *Ryan*, 850 F.3d at

427 (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). This is not a close question in this case.

At the time of the incident on January 9, 2020, it was clearly established that slamming an *unresisting* pretrial detainee to the ground violates the Fourteenth Amendment. *Thompson*, 350 F.3d at 735 (constitutional violation established where officers beat inmate who was not resisting or making a disturbance). Accordingly, McKee is not entitled to qualified immunity.

It was also clearly established that spraying an unresisting pretrial detainee with pepper spray violates the Fourteenth Amendment. *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) ("An application of pepper spray when an inmate is being compliant can provide a basis for an Eighth Amendment[17] claim."). Accordingly, Green is not entitled to summary judgment.

Finally, "it was clearly established that a jail official violates a detainee's due-process rights if the official knows that another official is using excessive force against the detainee but fails to intervene." *Edwards*, 750 F.3d at 733. Accordingly, Archer is not entitled to summary judgment.

---

[17] The Plaintiff in *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006) was a convicted prisoner, not a pretrial detainee. Thus, the Eighth Amendment, not the Fourteenth Amendment's Due Process Clause, applied to his claims. "However, the Due Process Clause affords pretrial detainees *at least* as much protection as the Eighth Amendment provides to convicted prisoners. Therefore, if the use of force in this case would have violated the Eighth Amendment had the plaintiffs been prisoners, that conduct necessarily violated the plaintiffs' rights under the Fourteenth Amendment." *Edwards*, 750 F.3d at 732 (emphasis added; internal citation omitted).

Moreover, if Barnes's narrative is to be believed, this is the kind of case where the unlawfulness of Defendants' actions is so "obvious" that a body of relevant case law is unnecessary to clearly establish the law. *Emmons*, 139 S. Ct. at 504; *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In other words, even without case law directly on point, any reasonable officer would know that "slamming," "macing," and "excessively restraining" an *unresisting* pretrial detainee would violate the law.

Accordingly, Defendants' Motion for Summary Judgment on Barnes's excessive force claims against Green, McKee, and Archer is DENIED.

### 2. Green, McKee, and Archer Are Not Entitled to Qualified Immunity on Barnes's Inadequate Medical Care Claim

"Prison officials violate the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to a pretrial detainee's objectively serious medical needs." *Ivey v. Audrain County, Mo.*, 968 F.3d 845, 848 (8th Cir. 2020) (citing *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020)). "To establish a constitutional violation, a [pretrial] detainee must demonstrate an objectively serious medical need that the defendant[s] knew about and deliberately disregarded." *Morris*, 954 F.3d at 1058.

According to Barnes's sworn statements, he suffered a dislocated shoulder as a result of McKee "slam[ming]" him to the ground, and he "begged" McKee, Green, and Archer for medical treatment for his shoulder, but treatment was refused. *Doc. 33 at 2*. He also states that Green sprayed him in the face with mace (*Id.*) and that

none of the Defendants provided him with timely decontamination and medical treatment (*Doc. 1*).

In their Affidavits, Defendants assert that: (1) "Barnes refused several direct orders to go into his cell for lockdown and began scuffling with [them]; (2) "[d]uring the scuffle Inmate Barnes was OC sprayed;" (3) "[t]he OC spray hit Inmate Barnes on the face;" (4) Barnes and McKee "fell to the floor;" (5) "Barnes began complaining of shoulder pain;" (6) McKee "notified the jail nurse so an ambulance could be called;" (7) "Barnes then indicated that he would refuse to be seen by the ambulance and that he no longer needed medical attention;" (8) "the ambulance was cancelled;" and (9) Barnes never "made a medical request about the OC spray." (*Doc. 46, Ex. 1-3 at ¶¶ 7–9, 11*).

In his sworn Response to Defendants' Statement of Undisputed Facts, Barnes states that: (1) Defendants never called an ambulance; and (2) he would "not ask for medical attention then deny it, if it was to come forth." *Doc. 49 at ¶ 3*.

Accepting Barnes's version of the facts as true, and viewing them in the light most favorable to him, Barnes has demonstrated that Defendants provided him with constitutionally inadequate medical care for the injuries he received after the use of force incident. While Defendants' Affidavits hotly dispute Barnes's version of the facts, the Court has previously explained why it is *not permitted* to resolve genuine

and disputed issues of material facts in deciding if Defendants are entitled to qualified immunity.

Further, it was clearly established at the time of the incident that failing to allow an inmate to decontaminate from pepper spray, in addition to a prior unconstitutional use of excessive force, constitutes a constitutional violation.[18] *Martz v. Barnes*, 787 F. App'x 356, 358 (8th Cir. 2019) (citing *Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014)).

Accordingly, Defendants' Motion for Summary Judgment on Barnes's inadequate medical care claims against Green, McKee, and Archer is DENIED.

## II. Conclusion

IT IS THEREFORE ORDERED THAT:

1. Barnes's Motion for Summary Judgment (*Doc. 27*) is DENIED.

2. Defendants' Motion for Summary Judgment (*Doc. 44*) is DENIED.

3. The claims asserted by Barnes in his Amended Complaint against Defendant McGahee are DISMISSED, WITHOUT PREJUDICE. The Clerk is directed to TERMINATE Defendant McGahee as a party to this action.

DATED this 14th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

---

[18] Defendants focused solely on the merits of Barnes's inadequate medical care claim and did not address whether the law was clearly established at the time of the alleged violation.